THE FLINTKOTE COMPANY, Appellant, v AMERICAN MUTUAL LIABILITY INSURANCE COMPANY et al., Respondents. (Action No. 1.)

AMERICAN MUTUAL LIABILITY INSURANCE COMPANY, Respondent, v THE FLINTKOTE COMPANY, Appellant, and LIBERTY MUTUAL INSURANCE COMPANY et al., Respondents. (Action No. 2.)

Second Department, October 22, 1984

**APPEARANCES OF COUNSEL**

*Shearman & Sterling (Joseph T. McLaughlin, Leslie J. Davis, James P. Tallon* and *Rachel E. Deming* of counsel; *Henry A. Udow* on the brief), for appellant.

*Siff & Newman, P. C. (Stewart I. Parker, Louis G. Corsi* and *Alexander J. Wulwick* of counsel), for American Mutual Liability Insurance Company, respondent.

*Clark, Gagliardi & Miller, P. C. (Lawrence T. D'Aloise, Jr.,* of counsel), for Midland Insurance Company, respondent.

*Lanzone & Kramer (Stephen G. Ringel* of counsel), for Lexington Insurance Company, respondent.

*Smith & Laquercia, P. C. (Edward L. Smith* and *Joseph P. Minasi* of counsel), for Admiral Insurance Company, respondent.

*Jeffrey S. Rovins (Lorelei Borland* of counsel), and *Morgan, Melhuish, Monaghan, Meyer, Arvidson, Abrutyn & Lisowski* for Home Insurance Company, respondent. (One brief filed.)

*Deegan, Scibilia & Reardon (Marian C. Rice* and *Donald E. Deegan* of counsel), for Commercial Union Insurance Company, respondent.

*Rivkin, Leff, Sherman & Radler (Jeffrey Silberfeld* and *Nancy K. Eisner* of counsel), for Continental Casualty Corporation, respondent.

*Rende, Ryan & Downes* and *Hogan & Hartson (James J. Downes, John P. Arness, P. C.,* and *Jamie M. Bennett* of counsel), for Hartford Accident and Indemnity Company, respondent. (One brief filed.)

*Heidell, Pittoni & Moran, P. C. (Albert S. Commette* and *Matthew J. McMahon* of counsel), for Highland Insurance Company, respondent.

*Kornfeld, Rew, Newman & Ellsworth (Thomas J. Newman* of counsel), for Fireman's Insurance Company, respondent.

*Cabell, Kennedy & French (T. Richard Kennedy* and *Philip R. Kastellec* of counsel), for North Star Reinsurance Corporation and another, respondents.

OPINION OF THE COURT

LAZER, J.

The Flintkote Company, a Delaware corporation, is a manufacturer of building construction materials, including polyurethane and asbestos products. Between 1973 and

1977 it was named as a defendant in 36 lawsuits which alleged that the installation of polyurethane foam caused fires in certain buildings and other property damage. These lawsuits were settled for a total of $650,000. In an action (action number one) brought in the Supreme Court, Westchester County, in 1981, Flintkote sued its primary liability insurers for failing to provide a defense in the polyurethane actions and for refusing to indemnify Flintkote for the settlement costs plus $1,200,000 in attorneys' fees and other litigation costs.

Its asbestos products have brought Flintkote even more litigation and the company faces a huge potential liability deriving from numerous lawsuits filed around the country by persons who have been exposed to asbestos. The record indicates that Flintkote has been named as a defendant in over 6,600 asbestos lawsuits involving 15,000 claimants and over $1,000,000,000 in claimed damages. In February, 1982, American Mutual Liability Insurance Company brought an action against Flintkote in the Supreme Court, Westchester County, for a declaration of its obligations with respect to the asbestos claims against Flintkote under the liability policies it had issued to Flintkote. This action subsequently was discontinued in the hope of reaching a settlement, but the parties agreed that American Mutual could recommence the suit upon 10 days' notice to Flintkote. During the 10-day period following the notice, Flintkote was prohibited from instituting any suit against American Mutual concerning coverage for asbestos claims. The agreement to discontinue the asbestos coverage action expressly declared that its terms were not to affect the polyurethane suit. Upon giving the requisite notice in April, 1983, American Mutual brought a declaratory judgment action (action number two) against Flintkote concerning the asbestos coverage, joining another primary insurer (Liberty Mutual Insurance Company) and 26 excess insurers. It simultaneously interposed an answer in Flintkote's polyurethane action, counterclaiming and cross-claiming for the same relief it was demanding in action number two. Eleven days later, Flintkote brought its own declaratory judgment action relative to asbestos coverage in the Superior Court of the State of California,

County of San Francisco, naming as defendants American Mutual, Liberty Mutual and the other excess insurers that American Mutual had named in action number two, but adding as well causes of action for fraud, breach of fiduciary duties, deceptive acts and conspiracy. On the same day, Flintkote petitioned in that court to add its case to a coordinated proceeding pending there which involved insurance coverage disputes between six major manufacturers of asbestos products and their insurers. The petition was denied on the ground that the proceeding would become unmanageable if the Flintkote action were joined in it.

In separate motions, Flintkote moved to dismiss or stay the proceedings in action number two and American Mutual's counterclaims and cross claims in action number one on the ground that another action was pending in California for the same relief (CPLR 3211, subd [a], par 4). Flintkote argued that California had the greatest interest in resolution of the dispute since the majority of lawsuits (4,200) and claimants (8,600) were in California, in contrast to only seven cases that had been brought in New York. Flintkote also contended that California has had the most experience with asbestos coverage litigation because of the major coordinated proceeding already pending there. Further grounds included the fact that most of the insurers were already parties to the California coordinated proceedings, that witnesses and documents were located in California, and that the polyurethane coverage action shared no common issue with the asbestos litigation. American Mutual and a number of the excess insurers in the asbestos causes of action opposed the motions on the ground that the asbestos and polyurethane actions require interpretation of the same insurance policies, that American Mutual commenced action number two before Flintkote commenced its California lawsuit, and that some of the insurance policies in question were issued in New York. Special Term denied Flintkote's motions on the grounds that action number two had been commenced by American Mutual prior to Flintkote's California action and that substantial similarity existed between the polyurethane and asbestos cases.

We believe a reversal is required because California is the most appropriate forum for resolution of the asbestos coverage dispute. While priority in the bringing of actions is a factor to be considered in choice of forum litigation, it is not controlling, especially when commencement of the competing actions has been reasonably close in time (*Seaboard Sur. Co. v Gillette Co.,* 75 AD2d 525; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:14, p 21). Here, American Mutual's action was brought only 11 days before Flintkote's California action, a result attributable to American Mutual's stipulation with Flintkote.

The essence of the insurers' opposition to Flintkote's motions is that Flintkote's commencement of the polyurethane coverage action in New York defeats its argument that New York is an improper forum for the asbestos coverage issues. We reject the insurers' contentions because they have not demonstrated, and we are unable to discern, any similarity between the two coverage disputes, apart from the fact that some of the same insurance policies are involved. The polyurethane litigation involves only seven insurers, five of which are not parties to the asbestos coverage litigation, only $1,850,000 is at stake, and all 36 suits brought by claimants have been concluded. At issue in the polyurethane litigation is whether the claims were settled without the insurers' consents, the reasonableness of the settlements and the litigation costs. In contrast, the asbestos litigation involves 28 insurers, over 15,000 claimants, more than $1,000,000,000 in claimed damages and more than $900,000,000 in insurance coverage. There is also a real possibility that additional claims may be brought against Flintkote because asbestos-related injuries take many years to manifest themselves after initial exposure (see *Insurance Co. of North Amer. v Forty-Eight Insulations,* 633 F2d 1212; *Borel v Fibreboard Paper Prods. Corp.,* 493 F2d 1076, cert den 419 US 869).

In the asbestos litigation, the primary dispute concerns interpretation of the insurance policies: specifically, the time when injury occurs within the meaning of the policies. The insurers generally advocate the manifestation theory

in which injury is not deemed to have occurred until the asbestos-related injury is diagnosed or becomes apparent (*Insurance Co. of North Amer. v Forty-Eight Insulations, supra*). Flintkote advances the exposure test which puts the insurers on risk at all times during a claimant's exposure to asbestos on the theory that asbestos causes a continuing series of injuries from the point of initial inhalation (see *Keene Corp. v Insurance Co. of North Amer.,* 667 F2d 1034, cert den 455 US 1007). Flintkote also raises issues of fraud, conspiracy and bad faith in the California asbestos coverage action which have absolutely no connection to the polyurethane action. Since the difference in issues between the asbestos and the polyurethane actions is enormous, there is no reason to try the larger, more complex asbestos coverage case together with the relatively simpler polyurethane action.

In deciding the forum issue, our inquiry is similar to that undertaken in applying the doctrine of *forum non conveniens* — whether the litigation and the parties have sufficient contact with this State to justify the burdens imposed on our judicial system (see *Gulf Oil Corp. v Gilbert,* 330 US 501; *Silver v Great Amer. Ins. Co.,* 29 NY2d 356; Siegel, NY Prac, § 28). On this record, we conclude that New York's contact with the parties to the asbestos litigation and with the litigation itself is comparatively small. Neither Flintkote nor its primary insurers are New York corporations nor do they have their principal place of business in this State. Furthermore, all of the asbestos plants were located outside of New York, and the great bulk of the relevant documents and witnesses are in California (see *Strain v Seven Hills Assoc.,* 75 AD2d 360). It is highly significant that more of the asbestos claims have been filed in California than in all other States combined. California thus has a greater interest in this litigation because the extent of coverage may affect the amount and timeliness of settlement or even whether the claims will be paid at all. Without full insurance coverage, Flintkote's ability to shoulder the tremendous financial burden is unknown (see *Argonaut Ins. Co. v Occidental Petroleum Corp.,* 106 Misc 2d 5). In addition, the thousands of California claimants may choose to sue Flintkote's insurers directly in Califor-

nia, as others have done against other manufacturers' insurers.

While the insurers are correct in their contention that choice of law must be given some weight in determining the most appropriate forum (*Moses H. Cone Hosp. v Mercury Constr. Corp.*, 460 US 1; *ACLI Int. v E.D. & F. Man* [*Coffee*], 76 AD2d 635), we cannot agree that New York law must apply to the asbestos litigation. Although it is unnecessary to decide the question, we recognize that there is a strong possibility that California law will apply because it is the principal location of the insured risk (see *Steinbach v Aetna Cas. & Sur. Co.*, 81 AD2d 382; Restatement, Conflict of Laws 2d, § 193). Not only would the State that is the principal location of the insured risk have the greatest interest in determining the issues arising under the insurance contracts, but the parties would naturally expect the law of that State to apply (*Cunninghame v Equitable Life Assur. Soc.*, 652 F2d 306; *Raymond v Monsanto Co.*, 329 F Supp 247).

The denial of Flintkote's petition to add its California action to the major coordinated proceeding pending there is not of great moment. The ruling was not based on a determination as to whether New York or California would be the most appropriate forum, but rested instead on the premise that the coordinated proceeding — involving six manufacturers and about 90 insurers — would be "unmanageable" if more cases were added. Although it is not clear whether Flintkote's California action will move in tandem with the coordinated proceeding, the California court will have greater familiarity with the issues involved in Flintkote's action (see *General Aniline & Film Corp. v Bayer Co.*, 305 NY 479), and consistency of result will be assured.

While we conclude that the counterclaims and cross claims in action number one should be dismissed without prejudice because they are unrelated to the main action, we need not dismiss action number two as well "but may make such order as justice requires" (CPLR 3211, subd [a], par 4). A stay of the proceedings in action number two pending determination of the California litigation is appropriate since an outright dismissal would surrender New York's jurisdiction and would impede the New York court's

ability to lend its aid if some unforeseen difficulty should arise in connection with the other action (Siegel, NY Prac, § 262).

TITONE, J. P., MANGANO and O'CONNOR, JJ., concur.

Order entered September 14, 1983, reversed insofar as appealed from and order entered September 23, 1983 reversed, in the exercise of discretion, without costs or disbursements, and the Flintkote Company's motions granted to the extent that American Mutual Liability Insurance Company's counterclaims and cross claims in action number one are dismissed, without prejudice, and the proceedings in action number two are stayed pending determination of an action entitled *Flintkote Co. v American Mut. Liab. Ins. Co.,* now pending in the Superior Court of the State of California, County of San Francisco (index No. 808594).