■ ATLANTIC MUTUAL INSURANCE COMPANY et al., Respondents, v CADILLAC FAIRVIEW US, INC., et al., Appellants, and ROYAL GLOBE INSURANCE COMPANY et al., Respondents.—Order, Supreme Court, New York County (Arthur E. Blyn, J.), entered March 28, 1986, which denied the motion of defendants Cadillac Fairview US, Inc. and Cadillac Fairview/California, Inc., to dismiss the complaint, is unanimously reversed, with costs, on the law, on the facts and in the exercise of discretion, the motion to dismiss the complaint upon the ground of forum non conveniens (CPLR 327) is granted.

The Atlantic Mutual Insurance Company (Atlantic) issued a comprehensive general liability insurance policy to Cadillac Fairview US, Inc. (CFUS) which insured CFUS and its subsidiaries, including Cadillac Fairview/California, Inc. (CF California), for the policy period of March 1, 1981 to September 1, 1983, and contained limits of liability of $1,000,000 per occurrence and in the aggregate. Furthermore, Centennial Insurance Company (Centennial), which is a wholly owned subsidiary of Atlantic, issued a separate commercial umbrella liability insurance policy to CFUS, which insured CFUS as well as its subsidiaries, including CF California, for the policy period of March 1, 1981 to September 1, 1983, and contained a

retained limit of $1,000,000 per occurrence and in the aggregate, and had per-occurrence and aggregate limits of liability of $9,000,000. The indorsements on the two policies clearly indicate that separate coverage had been provided to CFUS and to its subsidiary CF California.

Both Atlantic and Centennial are New York corporations, with their principal places of business in New York, and both of the subject policies were issued in New York State.

CFUS is a Delaware corporation, with its principal place of business in Delaware. It has numerous subsidiaries and affiliates operating in various parts of the United States.

CF California is a California corporation, with its principal place of business in Los Angeles, California. The business engaged in by CF California is real estate development, and it conducts that business solely in California. It is not authorized to do business in New York.

In 1976, CF California purchased, as part of a much larger transaction, the Pacific Gateway Center in Torrance, California, which included the Del Amo Site (Site). Approximately five years later, in 1981, toxic waste material was discovered on this 2½-acre Site, and, in 1982, the California Department of Health Services (DOHS) directed CF California to, in substance, remove this toxic waste.

Some of the significant consequences to CF California, as a result of the discovery of the toxic waste on the Site, have been as follows: substantial claims have been asserted, and an action has been filed in the Superior Court of the State of California for the County of Los Angeles, against CF California, concerning this toxic waste problem, by persons who live or own property in the area adjacent to or near the site; CF California has commenced an action, in the United States District Court for the Central District of California, against the parties allegedly responsible for the actual placement on the Site of the toxic waste, such as the Shell Oil Company and Dow Chemical Company; and CF California has incurred, and is continuing to incur, substantial expenses in connection with this problem.

CF California alleges that, on or about June 7, 1983, it notified Atlantic and Centennial in writing of the potential toxic waste claims, arising out of CF California's ownership of the Site. Following this notice, CF California, pursuant to the provisions of the subject policies, sought to have Atlantic and Centennial indemnify and defend it with respect to those claims. Thereafter, for about two years, negotiations took

place between CF California and Atlantic and Centennial to try and resolve this matter, and those negotiations included meetings in California, at which allegedly CF California presented to Atlantic and Centennial, *inter alia,* voluminous documentation of its position. Ultimately, these negotiations broke down, and in June 1985, plaintiffs Atlantic and Centennial commenced a declaratory judgment action in New York County against defendants CFUS, CF California, Aetna Casualty and Surety Company (Aetna), and Royal Globe Insurance Company (Royal) to determine the rights and liabilities of the parties.

CFUS entities had been covered by both primary and excess insurance policies issued, before March 1, 1981, by defendant Aetna, a Connecticut corporation, and, after September 1, 1983, by defendant Royal, an Illinois stock company.

Plaintiffs Atlantic and Centennial, in substance, seek in the instant action a declaratory judgment to the effect that: (1) they are neither obligated, under the subject two policies, to reimburse defendant CFUS and/or defendant CF California for expenses incurred in connection with the toxic waste present on the Site nor to indemnify or defend those defendants with regard to this condition; and, (2) they are not obligated to reimburse defendants Aetna and Royal for any coverage provided by them concerning this matter.

The summons and complaint in the plaintiffs' action was served on defendant CFUS in Wilmington, Delaware, and on defendant CF California in Los Angeles, California.

Within two months, after plaintiffs commenced their New York action, CF California commenced an action against Atlantic, Aetna and Royal in the Superior Court of the State of California for the County of Los Angeles. CF California is seeking in its action compensatory and punitive damages, based upon, *inter alia,* Atlantic's alleged breach of its policy in failing and refusing to indemnify and defend CF California, and for Atlantic's alleged violations of the California Insurance Code.

In response to the receipt of process in plaintiffs' New York action, defendants CFUS and CF California moved to dismiss that complaint upon, among other grounds, the doctrine of forum non conveniens (CPLR 327 [a]), in that California is a more appropriate forum than New York. Plaintiffs opposed. Thereafter, Trial Term denied this motion.

Following a review of the record, we find that Special Term erred.

CPLR 327 permits a court to stay or dismiss an action when it determines that such action, although jurisdictionally sound, would be better adjudicated elsewhere than in New York State *(see generally, Banco Ambrosiano v Artoc Bank & Trust,* 62 NY2d 65 [1984]; *Hammett v Warner Bros. Pictures,* 176 F2d 145 [2d Cir 1949]; Siegel, NY Prac § 28; 1 Weinstein-Korn-Miller, NY Civ Prac ¶ 327.01).

Our examination of legal authority clearly indicates that "the court's overall focus must relate to the question of whether New York is an inconvenient forum and whether another is available 'which will best serve the ends of justice and the convenience of the parties.' *(Silver v Great Amer. Ins. Co.,* 29 NY2d 356, 361 * * *)" *(Irrigation & Indus. Dev. Corp. v Indag, S. A.,* 37 NY2d 522, 525 [1975]).

Plaintiffs issued the insurance policies to defendants CFUS and CF California in New York, but that fact standing alone does not automatically make New York the most convenient forum since, in deciding forum non conveniens cases, there is no single factor that is determinative *(Islamic Republic v Pahlavi,* 62 NY2d 474, 479 [1984], *cert denied* 469 US 1108 [1985]).

The record before us indicates that: the toxic waste Site is in California; over the past several years, extensive efforts have been undertaken by California governmental authorities, such as DOHS, to deal with the problem; many allegedly affected residents and property owners in the vicinity of the Site have, as mentioned *supra,* brought actions in the California courts, which actions are still pending determination; and most of the witnesses and documents relevant to the plaintiffs' New York action are located in California.

Since plaintiffs operate their insurance business throughout the United States, and each one of them has at least three offices in California, located in Irvine, Sacramento and San Francisco, we find that these plaintiffs will not be unfairly burdened by being required to litigate in California.

Plaintiffs commenced their New York action against defendants CFUS and CF California, as mentioned *supra,* shortly before CF California commenced its California action, and we conclude from that fact that these actions were, in substance, commenced in relatively close proximity to one another. We have held in *Seaboard Sur. Co. v Gillette Co.* (75 AD2d 525 [1st Dept 1980]), that "[w]hile priority must be considered in weighing [a forum non conveniens] motion, it is not necessarily the controlling factor".

In summary, after balancing the competing factors, we find that "California is the most appropriate forum for resolution of the * * * coverage dispute" *(Flintkote v American Mut. Liab. Ins. Co.,* 103 AD2d 501, 505 [1984], *affd* 67 NY2d 857 [1986]).

Since we are granting the defendants' motion to dismiss on the ground of forum non conveniens, we do not reach any other issues.

Accordingly, we reverse and grant the motion of defendants CFUS and CF California. Concur—Kupferman, J. P., Sandler, Ross, Carro and Kassal, JJ.