OPINION OF THE COURT
Shirley Werner Kornreich, J.
Defendants NYSE Euronext, Ellyn L. Brown, Marshall N. Carter, Patricia M. Cloherty, Duncan M. McFarland, James J. McNulty, Duncan L. Niederauer, Robert G. Scott, Jackson P Tai, Baseball Merger Sub, LLC (BMS), and IntercontinentalExchange, Inc. (ICE) move for an order, pursuant to CPLR 327 (a) and 3211 (a) (4), dismissing or staying this action.[1] Defendants’ motion is denied for the reasons that follow.
I. Factual Background and Procedural History
This is a consolidated class action brought by shareholders of the NYSE to challenge its proposed sale to ICE (the merger). On December 20, 2012, at 8:24 a.m., a press release was publicly issued announcing the general details of the merger. Just over six hours later, at 2:28 p.m., a class action was commenced by other NYSE shareholders in Delaware Chancery Court, styled Cohen v NYSE Euronext (No. 8136). At 3:20 p.m., the press release was filed with the Securities and Exchange Commission (SEC) on a Form 8-K. Later that evening, at 9:52 p.m., the merger agreement was publicly disclosed for the first time, also on a Form 8-K filed with the SEC. The complaint in Cohen did not name BMS as a defendant because the identity of BMS (a wholly owned subsidiary of ICE that was formed for the purpose of carrying out the terms of the merger agreement) was not publicly disclosed until the Merger agreement was made public. Indeed, compared to the complaints in the other class actions discussed herein, the Cohen complaint is relatively bare bones, lacking much of the detail found in the other complaints. Such *621 detail was not capable of being included given the time frame in which it was filed.
The following evening, December 21, 2012, the complaint in the first of four virtually identical class actions was filed in this court under the instant index number (654496/2012), styled New Jersey Carpenters Pension Fund v NYSE Euronext. On December 26, 27, and 28, 2012, the other three class actions were filed in this court, respectively styled KT Invs. II, LLC v Niederauer (index No. 654515/2012); Graff v Hessels (index No. 654519/2012); and Himmel v NYSE Euronext (index No. 654576/2012). Between December 31, 2012 and January 16, 2013, seven more class actions were commenced in Delaware Chancery Court.
On January 3, 2013, plaintiffs in the New York class actions brought an order to show cause seeking consolidation of the New York class actions and appointment of lead counsel. The motion was granted, without opposition, in an order entered on January 11, 2013. On January 28, 2013, this court issued an order consolidating the four New York class actions (New Jersey Carpenters, KT Invs., Graff, and Himmel) under the instant index number bearing the caption found at the top of this order.[2] Annexed to that order is a “so ordered” document titled “Case Management Order No. 1” in which, inter alia, plaintiffs were directed to designate liaison counsel for the purposes of coordinating discovery with the plaintiffs in the Delaware class actions, which they did on January 29, 2013. The Delaware class actions were subsequently consolidated and styled In re NYSE Euronext Shareholder Litig. (C.A. No. 8136) (the Delaware action).
On February 7, 2013, plaintiffs in this action filed a consolidated class action complaint, asserting three causes of action: (1) breach of fiduciary duty against the individual defendants; (2) aiding and abetting breach of fiduciary duty against ICE and BMS; and (3) injunctive relief against all defendants. On February 15, 2013, a discovery scheduling order was issued in the Delaware action.
After oral arguments were held on the instant motion on February 20, 2013, a preliminary conference was held at which a discovery schedule was set based on the dates set forth in the *622 Delaware scheduling order. In order to avoid duplication in the New York and Delaware cases, the preliminary conference order specifically prohibited defendants from communicating with the plaintiffs in the Delaware action regarding discovery without involving the plaintiffs in this action. On February 22, 2013, a telephone compliance conference was held to ensure that production of electronically stored information (ESI) in this action and the Delaware action was properly coordinated and that plaintiffs in this action were given an opportunity to propose additions to the ESI protocols in the Delaware action (which plaintiffs were not given an opportunity to negotiate). ICE consented to plaintiffs’ proposed additions, and this court issued an order permitting minor additions to NYSE’s protocol. To date, the parties have represented to this court that they are working productively with the parties in the Delaware action and the process of coordinated discovery appears to be moving along smoothly.
That being said, defendants still seek dismissal of this action on the ground that the duplicative costs and risk of inconsistent rulings in this action and the Delaware action warrant this court’s deferral to the Delaware Chancery Court to handle this matter, which unquestionably affects the internal affairs of Delaware companies. While this is true, this action’s only nexus to Delaware is that it is the state of incorporation of NYSE and ICE, corporations which do business in New York and Georgia, respectively. (See Broida v Bancroft, 103 AD2d 88, 91 [2d Dept 1984] [“ ‘The vague principle that courts will not interfere with the internal affairs of a corporation whose foreignness is at best a metaphysical concept, must fall before the practical necessities of the modern business world’ (Note, 44 Harv L Rev 437, 439)”].) It is undisputed that virtually all of the parties, witnesses, evidence, and other affected parties (such as NYSE’s employees) are located in New York. Indeed, at least 16 law, banking, and consulting firms have been retained to advise on the merger, all of which are located in Manhattan. Negotiations for the deal occurred in New York. And, not to belabor the obvious, this is a case about the future of the New York Stock Exchange, one of New York City’s iconic institutions and the exchange at the heart of the international financial industry, to which no city is more important than New York. New York has a significant interest in this case.
Nevertheless, for the reasons discussed infra, part II, it would be erroneous to contend that Delaware is an inappropriate *623 forum for this litigation in accordance with the internal affairs doctrine. The Delaware Chancery Court, not this court, has the discretion to stay or dismiss the Delaware action. It should be noted, however, that — for whatever reason — defendants have only filed a motion to dismiss this action and not the Delaware action. Thus, the reality is, absent a change of heart by the parties in the Delaware action and a decision by the Chancery Court, the parallel actions will both proceed and discovery will continue to be coordinated.
II. Discussion
Dismissal may be granted under CPLR 3211 (a) (4) when “there is another action pending between the same parties for the same cause of action in a court of any state or the United States; the court need not dismiss upon this ground but may make such order as justice requires” (emphasis added). The standard on a motion to dismiss under CPLR 3211 (a) (4) “is similar to that undertaken in applying the doctrine of forum non conveniens — whether the litigation and the parties have sufficient contact with this State to justify the burdens imposed on our judicial system.” (Flintkote Co. v American Mut. Liab. Ins. Co., 103 AD2d 501, 506 [2d Dept 1984].)
New York’s forum non conveniens statute, CPLR 327 (a), provides that “[w]hen the court finds that in the interest of substantial justice the action should be heard in another forum, the court. . . may stay or dismiss the action in whole or in part on any conditions that may be just.” The decision as to forum non conveniens is a matter of discretion, and the party challenging the forum bears the burden of demonstrating inconvenient forum. (Islamic Republic of Iran v Pahlavi, 62 NY2d 474, 478-479 [1984].) Among the factors traditionally considered in determining the issue are: the hardship faced by the defendant in defending in New York; the availability of an alternate forum; and the residence of the parties and the jurisdiction in which the transaction occurred. (Id.) The rule of forum non conveniens is flexible and has as its goal fairness, justice and convenience. (Id.)
Contrary to defendants’ assertions, the forum in which the litigation was first commenced is not the dispositive factor in deciding whether to grant a motion under CPLR 3211 (a) (4). (See L-3 Communications Corp. v SafeNet, Inc., 45 AD3d 1, 9 [1st Dept 2007] [“New York courts have consistently held that even though the first-in-time rule is a factor to be considered in choosing the appropriate forum for litigation, ‘ “it is not con *624 trolling, especially when commencement of the competing actions) has been reasonably close in time” ’ ” (citations omitted)]; Matter of Topps Co., Inc. Shareholder Litig., 19 Misc 3d 1103[A], 2007 NY Slip Op 52543[U], *3 [Sup Ct, NY County 2007, Cahn, J.] [“Although priority in the commencement of the action is a factor to be considered in determining whether dismissal pursuant to CPLR 3211(a)(4) is appropriate, it is not necessarily dispositive” (citing Roberts v 112 Duane Assoc. LLC, 32 AD3d 366 [1st Dept 2006])].) The appellate and federal courts in this state have recognized that enforcing a strict “first to file” rule is tantamount to sanctioning “ ‘procedural gamesmanship’ and reward[s] a party ‘ “for winning a race to the courthouse.” ’ ” (White Light Prods. v On The Scene Prods., 231 AD2d 90, 98 [1st Dept 1997], citing Hartford Acc. & Indem. Co. v Hop-On Intl. Corp., 568 F Supp 1569, 1573 [SD NY 1983].) The “literal application of the first to file rule under such circumstances ‘ “would create disincentives to responsible litigation” ’ by discouraging settlement negotiations out of apprehension that an adversary might take advantage of the opportunity to file a preemptive suit in an advantageous forum.” (Id. at 98-99, quoting Don King Prods., Inc. v Douglas, 735 F Supp 522, 533 [SD NY 1990].)
This court cannot determine, on the record before it, whether the timing of the filing of the Cohen action was procedural gamesmanship. However, the court cannot ignore the fact that deferring to the Delaware court based on an action commenced one day earlier than the New Jersey Carpenters action incentivizes a race to the courthouse within hours of the announcement of every major corporate merger. This concern is further amplified by the startling statistics cited by defendants, such as the fact that stockholders bring class action lawsuits in 91% of merger transactions valued in excess of $100 million and that nearly half of litigated deals involve duplicative shareholders suits in multiple fora. (See defendants’ mem at 18, citing Robert M. Daines & Olga Koumrian, Recent Developments in Shareholder Litigation Involving Mergers and Acquisitions at 2-3 [Mar. 2012], Cornerstone Research, http://www.cornerstone.com/files/Publication/2af469a2-f24a-4435-96c0-a36d24a541ae/Presentation/PublicationAttachment/876cdfd2-dl05-408e-aee0-a37fe880c07a/Cornerstone_Research_Shareholder_MandA_ Litigation_03_2012.pdf; Andrew J. Pincus, The Trial Lawyers’ New Merger Tax at 3 [Oct. 2012], U.S. Chamber Institute for Legal Reform, http://www.instituteforlegalreform.com/sites/ *625 default/files/M%20and%20A.pdf; Matthew D. Cain & Steven M. Davidoff, A Great Game: The Dynamics of State Competition and Litigation at 12-13 [Jan. 2013], available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=1984758 [click download].)
Chancellor Leo E. Strine, who is presiding over the Delaware action, recognizes that a strict first to file rule creates perverse incentives. (See In re Cox Communications, Inc. Shareholders Litig., 879 A2d 604, 608 [Del Ch 2005] [“hastily-filed, first-day complaints that serve no purpose other than for a particular law firm and its client to get into the medal round of the filing speed (also formerly known as the lead counsel selection) Olympics”]; see also TCW Tech. Ltd. Partnership v Intermedia Communications, Inc., 2000 WL 1654504, *3, 2000 Del Ch LEXIS 147, *9 [Oct. 17, 2000, Nos. 18336, 18289 & 18293] [“Too often judges of this Court face complaints filed hastily, minutes or hours after a transaction is announced, based on snippets from the print or electronic media. Such pleadings are remarkable, but only because of the speed with which they are filed in reaction to an announced transaction”].) Moreover, Chancellor Strine recently argued that courts should abandon the “first-filed” rule in a well publicized academic paper. (See Leo E. Strine, Jr., Lawrence A. Hamermesh & Matthew C. Jennejohn, Putting Stockholders First, Not the First-Filed Complaint at abstract [Jan. 10, 2013], Harvard John M. Olin Center for Law, Economics, and Business Discussion Paper No. 740, available at http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2200499 [click download] [“The ‘first-filed’ rule should be replaced in shareholder representative litigation by meaningful consideration of affected parties’ interests and judicial efficiency”].)
This court agrees with Chancellor Strine that there are more important considerations than where a lawsuit was first commenced, especially in a situation, as here, where the first filed Delaware and New York cases were commenced a mere day apart. As discussed supra, part I, the forum non conveniens factors of hardship to defendants, residence of the parties, jurisdiction, and New York’s nexus to the litigation militate in favor of litigating this action in New York. Additionally, the Commercial Division of this court and the federal district courts in this state routinely apply Delaware corporate law when the litigation involves the internal affairs of Delaware companies that do business in New York.
“[A] suit which concerns the internal affairs of a *626 foreign corporation should be entertained [in New York] unless the same factors that would lead to dismissal under forum non conveniens principles suggest that New York is an inconvenient forum and that litigation in another forum would better accord with the legitimate interests of the litigants and the public.” (Broida, 103 AD2d at 91 [citations omitted].)
That is not the case here. In sum, defendants have failed to carry their burden of establishing that fairness, justice and convenience require this court to dismiss or stay the action in favor of Delaware and deprive the litigants in New York of their choice of forum.
The fact that duplicative shareholder actions are brought in New York and Delaware is not a unique circumstance. As noted earlier, supra, Part II, approximately one half of all merger deals result in such duplicative class actions. No judge in one jurisdiction, having found it appropriate to retain a case, has the ability to direct a judge in another jurisdiction, who has found it appropriate to do the same, to dismiss or stay his or her case. Comity and fairness dictate that the courts, instead, cooperate to ensure efficient coordination by the parties and the courts.
This court has coordinated multiforum litigation with other courts. (See e.g. Fiala v Metropolitan Life Ins. Co., Inc., 27 Misc 3d 599 [Sup Ct, NY County 2010, Kornreich, J.]; In re MetLife Demutualization Litig., 689 F Supp 2d 297 [ED NY 2010, Weinstein, J.] [coordinating class actions arising out of an insurance company’s conversion from a mutual insurance company to a stock corporation with Judge Jack B. Weinstein of the United States District Court for the Eastern District of New York]; see also In re Bextra & Celebrex Mktg. Sales Practices & Prod. Liab. Litig., 524 F Supp 2d 1166, 1171 [ND Cal 2007, Breyer, J.] [discussing holding joint hearings on the admissibility of expert testimony with this court in conjunction with Matter of New York Bextra & Celebrex Prod. Liab. Litig. (index No. 762000/2006, Kornreich, J.)]; Matter of Bausch & Lomb Contact Lens Solution Prod. Liab. Litig., 25 Misc 3d 1244[A], 2009 NY Slip Op 52571[U], *3 [Sup Ct, NY County 2009, Kornreich, J.] [discussing holding joint Frye and Daubert hearings with Judge David C. Norton of the United States District Court for the District of South Carolina in conjunction with In re Bausch & Lomb Inc. Contact Lens Solution Prods. Liab. Litig. (MDL No. 1785, C/A No. 2:06-MN-77777-DCN)].) As observed by Judge Weinstein in In re MetLife, “[i]t is the policy of the federal *627 courts to encourage coordination of pending state and federal cases concerning the same and closely related transactions.” (689 F Supp 2d at 307, citing In re Zyprexa Prods. Liab. Litig., 467 F Supp 2d 256 [ED NY 2006].) This should be the policy in all jurisdictions.
Accordingly, it is ordered that the motion by defendants NYSE Euronext, Ellyn L. Brown, Marshall N. Carter, Patricia M. Cloherty, Duncan M. McFarland, James J. McNulty, Duncan L. Niederauer, Robert G. Scott, Jackson E Tai, Baseball Merger Sub, LLC, and IntercontinentalExchange, Inc. to dismiss or stay this action is denied; and it is further ordered that the E-Filing Clerk shall update the NYSCEF system to reflect the current caption in this action.

. The instant motion to dismiss was filed on January 30, 2013, under the index number for the KT Invs. II, LLC v Niederauer action. The parties have subsequently stipulated to apply the briefing on the instant motion to the consolidated action and have commenced a new motion sequence accordingly. Thus, this order shall apply to this action.

. The court notes that the New York State Courts Electronic Filing (NYSCEF) system still bears the New Jersey Carpenters caption. The court directs (and orders herein) the E-Filing Clerk to properly update the caption.